## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**LOS ALAMOS STUDY GROUP,**

        **Plaintiff,**                    **No. CIV-10-0760 JCH/ACT**

**v.**

**UNITED STATES DEPARTMENT OF**
**ENERGY; THE HONORABLE STEPHEN**
**CHU, in his official capacity as SECRETARY,**
**DEPARTMENT OF ENERGY;**
**NATIONAL NUCLEAR SECURITY**
**ADMINISTRATION; THE HONORABLE**
**THOMAS PAUL D'AGOSTINO, in his**
**Capacity as ADMINISTRATOR,**
**NATIONAL NUCLEAR SECURITY ADMINISTRATION,**

        **Defendants.**

## MAGISTRATE JUDGES'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the Honorable Judith Herrera's Order of Reference filed on November 17, 2010, pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B). [Doc. 15.] The District Court referred this matter to the undersigned Magistrate Judge to submit proposed findings of fact and recommendations for disposition of Defendants United States Department of Energy, the Honorable Stephen Chu, the National Nuclear Security Administration, and the Honorable Thomas Paul D'Agostino's Motion to Dismiss for Lack of Jurisdiction and Brief in Support filed on October 4, 2010. [Doc. 9.]

I.     <u>Procedural Background</u>

     1.  This action arises under the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4370(f) ("NEPA"), together with the implementing regulations for NEPA issued by the

White House Council on Environmental Quality (the "CEQ Regulations"), 40 C.F.R. §§ 1500-08, and regulations issued by the Department of Energy ("DOE"), 10 C.F.R. § 1021. [Doc. 1 at ¶ 1.]  This action also arises under the Administrative Procedure Act ("APA"), U.S.C.A.  §§ 701 et seq. [*Id.*]

    2.  In its Complaint, Plaintiff challenges the adequacy of the Department of Energy/National Nuclear Security Administration's ("DOE/NNSA or "NNSA") analysis of potential environmental impacts from the construction and operation of the proposed Chemistry and Metallurgy Research Replacement Nuclear Facility ("CMRR-NF") at Los Alamos National Laboratory ("LANL"). [Doc. 1 at ¶ 2.]  The National Nuclear Security Administration ("NNSA") is responsible for the management and security of the nation's nuclear weapons, nuclear nonproliferation, and naval reactor programs. [Doc. 9, Ex. A, and 50 U.S.C. § 2401(b).] NNSA is also responsible for the administration of LANL. [*Id.*]

    3.  The Complaint seeks a declaratory judgment and mandatory injunction requiring Defendants to prepare a new Environment Impact Statement ("EIS") regarding the CMRR-NF and also seeks to prohibit all further investments in the CMRR-NF. [Doc. 1 at ¶ 3.] Specifically, in Count I, Plaintiff alleges that Defendants violated NEPA and the APA by failing to prepare an applicable EIS for the CMRR-NF.  It claims that Defendants' current proposal differs substantially from the 2003 EIS and the 2004 Record of Decision ("ROD") and that a new EIS should be prepared. [Doc. 1 ¶¶ 52-64.] In Count II, Plaintiff alleges that Defendants have failed to develop an EIS which addresses "connected actions" to the CMRR-NF and that Defendants should prepare a new EIS which address these actions.  [Doc. 1 ¶¶ 65-71.]  In Count III, Plaintiff alleges that Defendants failed to provide required mitigation measures and a mitigation action plan in the 2003 EIS and the 2004 ROD and that they should prepare a new

EIS which addresses reasonable mitigation measures.  [Doc. 1 ¶¶ 72-79.] In Count IV, Plaintiff alleges that the Defendants' decision making processes for the CMRR-NF exceed the scope of the 2003 EIS and the 2004 ROD and that all activities should be stopped pending the completion of a new EIS and ROD. [Doc. 1 ¶¶ 80-90.] In Count V, Plaintiff alleges that the proposed CMRR-NF involves a much greater commitment of resources and has a far greater impact than what was analyzed in the 2003 EIS and the 2004 ROD.  It alleges that the DOE authorized production of a Supplement Analysis which addresses the changed project parameters and allegedly determines if a Supplemental EIS ("SEIS") or a new EIS should be prepared has not been made public or provided to the Plaintiff. [Doc. 1 ¶¶ 91-95.]

4.  Defendants filed a Motion to Dismiss [Doc. 9] which argues that (1) some of Plaintiff's claims are time-barred, (2) Plaintiff's claims are not ripe for review, (3) Plaintiff's claims are moot, and alternatively (4) Plaintiff's claims should be dismissed under the doctrine of prudential mootness.

5.  Having considered the pleadings, the exhibits, and the relevant law, the undersigned Magistrate Judge recommends that Plaintiff's Complaint be dismissed pursuant to the doctrine of prudential mootness.

II.   Factual Background

6.  In 2002, NNSA published a Notice of Intent to prepare the CMRR-NF EIS and invited public comment on the CMRR-NF EIS proposal. [Doc. 9-1 at ¶ 9.]  The Chemical and Metallurgy Research ("CMR") building which prompted Defendants to propose the CMRR-NF in 2002 was almost 60 years old and near the end of its useful life. [*Id.* at ¶ 6.] The CMR building is a facility which has "unique capabilities for performing special nuclear material

analytical chemistry, materials characterization, and actinide[1] research and development." [*Id.* at ¶ 5.]  CMR supports various national security missions including nuclear nonproliferation programs; the manufacturing, development, and surveillance of pits (the fissile core of a nuclear warhead); life extension programs; dismantlement efforts; waste management; material recycle and recovery; and research. [*Id.*]   NNSA's proposal to construct the replacement facility, CMRR-NF, was to insure that NNSA could "fulfill its national security mission for the next 50 years in a safe, secure, and environmentally sound manner." [*Id.* at  ¶¶ 7 and 8.]

7.  NNSA hosted two public meetings on the proposed CMRR in August of 2002 and published a Draft EIS. [*Id.* at ¶ 9.]  NNSA issued a Final EIS in November 2003. [*Id.*]  NNSA published its Record of Decision ("ROD") on the 2003 EIS in the Federal Register on February 12, 2004. [*Id.* at ¶ 10; 69 Fed.Reg. 6967 (Feb.12, 2004).]

8.  The 2004 ROD announced that the CMRR Project would consist of two buildings: a single, above-ground consolidated special nuclear material-capable, Hazard Category 2 laboratory building (the CMRR-NF), and a separate but adjacent administrative office and support building, the Radiological Laboratory Utility Office Building ("RLUOB"). [Doc. 9-1 at ¶ 10.]

9.  Since the 2003 EIS and the 2004 ROD were published, Defendants acknowledge that new developments have arisen which require changes to the proposed CMRR. [*Id.* at ¶ 12.]  A site-wide analysis of the geophysical structures that underlay the area occupied by LANL was prepared and revealed new geologic information regarding the seismic conditions at the site. [*Id.*;

---

[1]"'Actinide' refers to the members of a series of elements that encompasses the 14 elements with atomic numbers from 90 to 103.  Uranium and Plutonium are actinides." [Doc. 9 at footnote 1.]

Doc. 10 at pp. 7-10.]  As a result of the new geologic information, as well as more information on the various support functions, actions, and infrastructure needed for construction "changes were made to the proposed design of the CMRR-NF."  [Doc. 9-1 at ¶ 12.] In addition, other changes were made to ensure that the facility "implements DOE's nuclear safety management design requirements for increased facility engineering controls to ensure protection of the public, workers, and the environment."  Also, "sustainable design principles have been incorporated to minimize the environmental impacts of construction and operation of the proposed CMRR-NF." [*Id.*]

10.  In light of the design changes, NNSA prepared a Supplement Analysis pursuant to 10 C.F.R. § 1021.314(c)(2) to determine (1) if the 2003 EIS should be supplemented, (2) if a new EIS should be prepared, or (3) if no further NEPA document was required.  [*Id.* at ¶ 15.]

11.  On July 1, 2010, counsel for Plaintiff wrote to the DOE and the NNSA and expressed concerns about the cost and adequacy of NNSA's NEPA analysis for the CMRR-NF. Plaintiff requested that DOE stop any and all CMRR-NF design activities, make no further contractual obligations, and seek no further funding until NNSA complete a new EIS for the CMRR-NF. [*Id.*]

12.  On July 30, 2010, NNSA informed the Plaintiff that it was preparing a Supplement Analysis. [*Id.*]

13.  Prior to NNSA's completion of the Supplement Analysis of how to proceed with possible changes to the proposed design of the CMRR-NF, Plaintiff filed its Complaint on August 16, 2010. [Doc. 1.]

14.  On September 21, 2010, NNSA's Deputy Administrator for Defense Programs, Donald L. Cook, decided "for prudential reasons" that the NNSA should complete an SEIS "to

5

analyze the potential environmental impacts associated with the construction of the proposed CMRR-NF." [Doc. 9-1 at § 16.]  A Notice of Intent to prepare an SEIS appeared in the October 1, 2010 issue of the Federal Register. [Doc. 9, Ex. 2.]

15.  The preparation of the SEIS includes a public scoping process which involves "two public scoping meetings to assist NNSA in identifying potential impacts, alternatives, and mitigation strategies that should be analyzed in the SIS."  [Doc. 9-1 at ¶ 17.] Other federal agencies, as well as state agencies, Native American tribes, and the general public, including Plaintiff, are on notice of the NNSA's intention to prepare an SEIS and can participate in determining the scope of the environmental analysis.  Thereafter, the NNSA will make a draft of the SEIS available to the public for a 45-day comment period and all comments will be considered in the preparation of the Final SEIS. [*Id.*]

16.  NNSA is still evaluating the aspects of relative sizing and layout of the proposed CMRR-NF, and the overall project design is less than 50 percent complete. [Doc.9-1, Ex. 1 ¶ 20.]  No CMRR-NF construction is underway, and none will occur while the SEIS is being prepared. [*Id*. at ¶ 21.]

17.  Between October 2010 and June 2011, the expected SEIS period, the overall design is expected to advance by only approximately 15 percent. [*Id*. at  ¶ 25.]  Construction of the CMRR-NF will not occur until <u>after</u> the SEIS is completed and a new ROD issued. [Doc. 9 at p. 27; Doc. 9-1 at ¶ 21.]   If, after completion of the SEIS, NNSA decides to proceed with construction of the proposed CMRR-NF, the building is not expected to be occupied and operational until 2022.  [*Id.* at ¶ 23; Doc. 10 at 11.]  NNSA has expended money over the course of the past six years for the <u>design</u> of the proposed CMRR-NF. [Doc. 9-1 at ¶ 19.]

III.     <u>Legal Framework for Prudential Mootness</u>.

18.   Prudential mootness is a legal doctrine closely related to Article III mootness.

However, prudential mootness arises from the doctrine of <u>remedial discretion</u>.   *Southern Utah*

*Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997).   Specifically, prudential

mootness addresses "not the power to grant relief but the court's discretion in the exercise of that

power."  *Id.*, *quoting Chamber of Commerce v. United States Dep't of Energy*, 627 F.2d 289, 291

(D.C.Cir.1980).   Thus, even if a case is not constitutionally moot, a court may dismiss the case

under the doctrine of prudential mootness if the case "is so attenuated that considerations of

prudence and comity for coordinate branches of government counsel the court to stay its hand,

and to withhold relief it has the *power* to grant." (Emphasis in original.)  *Rio Grande Silvery*

*Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010), *quoting Fletcher v.*

*United States*, 116 F.3d 1315, 1321 (10th Cir. 1997); *Southern Utah Wilderness Alliance v.*

*Smith*, 110 F.3d at 727, *quoting Chamber of Commerce v. United States Dep't of Energy*, 627

F.2d 289, 291 (D.C.Cir.1980).

19.   The Tenth Circuit has expressly recognized the doctrine of prudential mootness, and

has stated that "it has particular applicability in cases . . . where the relief sought is an injunction

against the government." *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d at 727 (citations

omitted).   In fact, "[a]ll the cases in which the prudential mootness concept has been applied

have involved a request for prospective equitable relief by declaratory judgment or injunction."

*Building and Construction Department; AFL-CIO v. Rockwell International Corporation*, 7 F.3d

1487, 1492 (10th Cir. 1993) (citations omitted).

20.   Under the prudential mootness doctrine, the central inquiry is whether

"circumstances [have] changed since the beginning of litigation that forestall any occasion for

meaningful relief." *Fletcher v. United States,* 116 F.3d at 1321; *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d at 727.  In cases involving prudential mootness, "a court may decline to grant declaratory or injunctive relief where it appears that a defendant, usually the government, has already changed or is in the process of changing its policies or where it appears that any repeat of the actions in question is otherwise highly unlikely." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d at 1122, *quoting Building and Construction Department*, 7 F. 3d at 1492.

21.  "[E]ven if some remnant of the original controversy be still alive [sic], [circumstances may exist] where the courts, as a matter of prudence and sound discretion, should stay their hand and withhold drastic injunctive relief." *State of New Mexico v. Goldschmidt*, 629 F.2d 665, 669 (10th Cir. 1980), *citing United States v. W.T. Grant Co.*, 345 U.S. 62, 669 (1953).

22.  The United States Supreme Court has stated that "sound discretion withholds the remedy where it appears that a challenged 'continuing practice' [of an administrative agency] is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted*." A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961), *cited with approval in  Chamber of Commerce v. United States Dep't of Energy*, 672 F.2d at 292.

23.  Because the doctrine of prudential mootness is concerned with the court's discretion to exercise its power to provide relief, the Court's determination of prudential mootness is reviewed for an abuse of discretion. *Fletcher v. U.S.*,  116 F.3d at 1321; *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d at 1124; *United States v. W.T.Grant Co.*, 345 U.S. at 635-36.

8

IV.   <u>Analysis</u>

24.  Plaintiff's Complaint seeks declaratory and injunctive relief with regard to the Defendants' activities in connection with the design of the CMRR-NF on the grounds that the project exceeds its scope as defined in the 2003 EIS and the 2004 ROD.

25.   Defendants are currently in the process of undertaking an SEIS, which would supercede the 2003 EIS and 2004 ROD, to ascertain how best to proceed with the proposed CMRR-NF in light of newly discovered geological information as well as design modifications that came to light after the completion of the 2003 EIS and 2004 ROD.  After the SEIS is completed, NNSA will decide, based on that study, how best to proceed with the proposed CMRR-NF.   Thus "circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief."   *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d at 727.

26.  "The purpose of an injunction is to prevent future violations."  *United States v. W.T.Grant Co.*, 345 U.S. at 633.  Here, there will be no future violations of the 2003 EIS and the 2004 ROD because the CMRR-NR project will be governed by the SEIS which is currently being conducted.

27.   The claims in the Plaintiff's Complaint seek declaratory and injunctive relief to ensure that Defendants' design and planning of the CMRR-NR conform to Plaintiff's request for a court-ordered new EIS.   However, because the Defendants are currently conducting an SEIS which has not yet been completed, it is premature for the Court to order the Defendants to prepare a new EIS.  The SEIS may very well address the Plaintiff's concerns about CMRR-NF.

28.  Plaintiff also requests that this court order Defendants to stop all activities in connection with the CMRR-NF pending the completion of a new EIS and ROD. [Doc. 1 ¶¶ 80-

90.]   Under the doctrine of prudential mootness, the district court has the discretion to withhold injunctive relief  "even if some remnant of the original controversy be still alive." *Goldschmidt*, 629 F.2d at 669, *citing United States v. W.T. Grant Co.*, 345 U.S. 629 (1953); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d at 1124, *quoting Goldschmidt*, 629 F.2d at 669.  "[A] court may decline to grant declaratory or injunctive relief where it appears that a defendant, usually the government, has already changed or is in the process of changing its policies." *Building and Construction Department v. Rockwell International Corp.*, 7 F.3d at 492.  The court has the general discretion in "formulating prospective equitable remedies, especially with regard to the government of the United States where 'consideration of . . . comity for coordinate branches of government' come into play." *Id., quoting Chamber of Commerce*, 627 F.2d at 291.  The moving party, in this case the Plaintiff, "must satisfy the court that relief is needed." *United States v. W.T. Grant Co.*, 345 U.S. at 633.

29.   Here, the doctrine of prudential mootness counsels against a court issued injunction to halt all work.  The Defendants are in the process of changing their policy in that they are conducting an SEIS which will supercede the 2003 EIS and 2004 ROD.  The expected duration for the completion of the SEIS is from October 2010 to June 2011. [Doc. 9 at p. 26.] In addition, any on-going activities pending the completion and publication of the SEIS are preliminary. [Doc. 10 at p. 10.]  The actual construction of the CMRR-NF will not occur until after the SEIS is completed and a new ROD issued. [Doc. 9 at p. 27.][2]  Furthermore, construction will take

---

[2] Plaintiff states that "[t]he Infrastructure Package may begin in March 2011." (Emphasis added.) [Doc.10 at pp.10-11.] Not only is this assertion qualified (infrastructure "may" begin), it is also unsupported. Moreover, even if Defendants should acknowledge that such infrastructure work will begin in March, the work described by Plaintiffs which "may" take place is not sufficient enough to alter the undersigned Magistrate Judge's recommendation that the doctrine of prudential mootness counsels against a court issued injunction to halt all work.

more than a decade, and the facility is not expected to be occupied and operational until 2022. [Doc. 10 at p. 11; Doc 9 at p. 16-17.] Plaintiff will have ample opportunity to renew its complaint if it finds it necessary when the SEIS is filed and before any construction begins.

## RECOMMENDED DISPOSITION

For the reasons stated above the undersigned Magistrate Judge recommends that the District Court dismiss Plaintiff's Complaint in its entirety based on the doctrine of prudential mootness.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(c). Within fourteen days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(c), file written objections to such proposed findings and recommendations with the Clerk of the United State District Court, 333 Lomas N.W., Albuquerque, NM 87102.  A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE