IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LOS ALAMOS STUDY GROUP,

       Plaintiff,

v.                                           No. 10-CV-760 JCH/ACT

UNITED STATES DEPARTMENT OF
ENERGY; THE HONORABLE STEPHEN
CHU, in his capacity as SECRETARY,
DEPARTMENT OF ENERGY;
NATIONAL NUCLEAR SECURITY
ADMINISTRATION; THE HONORABLE
THOMAS PAUL D'AGOSTINO, in his
capacity as ADMINISTRATOR,
NATIONAL NUCLEAR SECURITY ADMINISTRATION,

       Defendants.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff Los Alamos Study Group's

*Objections to Magistrate Judge's Proposed Findings and Recommended Disposition*, filed

January 20, 2011 [Doc. 33]. On November 17, 2010, the Court referred Defendants' *Motion to*

*Dismiss for Lack of Jurisdiction* [Doc. 9] to the Magistrate Judge for proposed findings of fact

and a recommended disposition pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). *See*

Doc. 15. On January 6, 2011, the Magistrate Judge filed his Proposed Findings and

Recommended Disposition (hereinafter referred to as "F&R"), recommending that Plaintiff's

Complaint be dismissed in its entirety based on the doctrine of prudential mootness. *See* Doc.

25. Plaintiff timely filed its objections.[1]

---

[1] Defendants also timely filed *Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition* [Doc. 32]. These Objections focus only on two minor

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed *de novo* the findings and recommendations to which Plaintiff objects.  In addition to exhaustively reviewing the briefs and voluminous exhibits submitted by the parties, the Court held hearings on April 27, 2011 and May 2, 2011, at which both sides were heard and during which the parties submitted additional material.[2]  Having carefully considered the Objections, briefs, relevant law, arguments of the parties at the hearings, and the submitted exhibits, and being otherwise fully informed, the Court finds that Plaintiff's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition are not well taken and will be DENIED.  Because this denial results in Plaintiff's Complaint being dismissed in its entirety, the Court does not reach Plaintiff's *Motion for Preliminary Injunction* [Doc. 13].

## BACKGROUND[3]

This action arises under the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4370(f) ("NEPA"), together with the implementing regulations for NEPA issued by the White House Council on Environmental Quality, 40 C.F.R. §§ 1500-08, and regulations issued by the Department of Energy ("DOE"), 10 C.F.R. § 1021.  This action also arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*.

---

inaccuracies in the factual section of the F&R, but do not object to the recommended disposition. The two minor inaccuracies are corrected in this Court's statement of facts.

[2] At the April 27, 2011 hearing, Plaintiff presented the Court with three binders of materials: (1) Plaintiff's Opening Statement Exhibits; (2) Gregory Mello Testimony Exhibits; and (3) Frank Von Hippel Testimony Exhibits.  In addition, the Court received a copy of Defendants' Draft Supplemental Environmental Impact Statement.  While these materials were not formally moved into evidence, both counsel referred to the exhibits, as did the witnesses, and the Court considered them in making its ruling.  Thus, they will be considered part of the record.

[3] This background section is taken largely from the Magistrate Judge's thorough but concise summation of the facts as laid out in Doc. 25 at 1-6.

In its Complaint [Doc. 1], Plaintiff challenges the adequacy of the Department of Energy/National Nuclear Security Administration's ("DOE/NNSA" or "NNSA") analysis of potential environmental impacts from the construction and operation of the proposed Chemistry and Metallurgy Research Replacement Nuclear Facility ("CMRR-NF") at Los Alamos National Laboratory ("LANL").  Complaint at ¶ 2.  The NNSA is responsible for the management and security of the nation's nuclear weapons, nuclear nonproliferation, and naval reactor programs. *See* Declaration of Donald L. Cook, attached as Ex. 1 to Deft. Mot. to Dismiss [Doc. 9] (hereinafter "Cook Decl.") at ¶ 3; 50 U.S.C. § 2401(b).   NNSA is also responsible for the administration of LANL.  *Id* at ¶ 4.

Plaintiff's Complaint seeks a declaratory judgment and mandatory injunction requiring Defendants to prepare a new Environment Impact Statement ("EIS") regarding the CMRR-NF and also seeks to prohibit all further investments in the CMRR-NF project, including any funds for detailed design or construction, until a new EIS is completed.  Complaint at ¶ 3. Specifically, in Count I, Plaintiff alleges that Defendants violated NEPA and the APA by failing to prepare an applicable EIS for the CMRR-NF.  It claims that Defendants' current proposal differs substantially from that considered in the project's 2003 EIS and the accompanying Record of Decision ("ROD") that was released in 2004, so that a new EIS must be prepared. Complaint at ¶¶ 52-64.  In Count II, Plaintiff alleges that Defendants have failed to develop an EIS which addresses "connected actions" to the CMRR-NF and that Defendants must prepare a new EIS to address them.  Complaint at ¶¶ 65-71.  In Count III, Plaintiff alleges that Defendants failed to provide required mitigation measures and a mitigation action plan in the 2003 EIS and the 2004 ROD and that they must prepare a new EIS which addresses reasonable mitigation measures.  Complaint at ¶¶ 72-79.  Count IV alleges that the Defendants' decision-making

processes for the CMRR-NF exceed the scope of the 2003 EIS and the 2004 ROD and that all activities should be stopped pending the completion of a new EIS and ROD.  Complaint at ¶¶ 80-90.  In Count V, Plaintiff alleges that the proposed CMRR-NF involves a much greater commitment of resources and has a far greater impact than what was analyzed in the 2003 EIS and the 2004 ROD.  It alleges that the DOE authorized production of a Supplement Analysis which addresses the changed project parameters and allegedly determines if a Supplemental EIS ("SEIS") or a new EIS should be prepared has not been made public or provided to Plaintiff.  Complaint at ¶¶ 91-95.

Defendants filed a Motion to Dismiss [Doc. 9] which argues that (1) some of Plaintiff's claims are time-barred; (2) Plaintiff's claims are not ripe for review; (3) Plaintiff's claims are moot; and, alternatively, (4) Plaintiff's claims should be dismissed under the doctrine of prudential mootness.

In 2002, NNSA published a Notice of Intent to prepare the CMRR-NF EIS and invited public comment on the CMRR-NF EIS proposal. Cook Decl. at ¶ 9.  At the time NNSA published the Notice of Intent, the Chemical and Metallurgy Research ("CMR") building that Defendants sought to replace was over 50 years old and allegedly nearing the end of its useful life.  *Id.* at ¶ 6.  The CMR building is a facility which has "unique capabilities for performing special nuclear material analytical chemistry, materials characterization, and actinide[4] research and development."  *Id.* at ¶ 5.  The CMR building supports various national security missions including nuclear nonproliferation programs; the manufacturing, development, and surveillance of pits (the fissile core of a nuclear warhead); life extension programs; dismantlement efforts;

---

[4] "Actinide" refers to the 14 elements with atomic numbers from 90 to 103.  Uranium and Plutonium are actinides. *See* Doc. 9 at 3 n.1.]

waste management; material recycle and recovery; and research.  *Id.*  NNSA's proposal to construct the replacement facility, CMRR-NF, was to insure that NNSA could "fulfill its national security mission for the next 50 years in a safe, secure, and environmentally sound manner."  *Id.* at  ¶¶ 7 and 8.

NNSA hosted two public meetings on the proposed CMRR project in August of 2002 and published a Draft EIS.  *Id.* at ¶ 9.  NNSA issued a Final EIS in November 2003.  *Id.*  NNSA published its Record of Decision ("ROD") on the 2003 EIS in the Federal Register on February 12, 2004.  *Id.* at ¶ 10; 69 Fed. Reg. 6967 (Feb.12, 2004).

The 2004 ROD announced that the CMRR project would consist of two buildings: a single, above-ground consolidated special nuclear material-capable, Hazard Category 2 laboratory building (the CMRR-NF), and a separate but adjacent administrative office and support building, the Radiological Laboratory Utility Office Building ("RLUOB"). Cook Decl. at ¶ 10.

Defendants contend that, since the 2003 EIS and the 2004 ROD were published, new developments have arisen that require changes to the proposed CMRR-NF structure.  *Id.* at ¶ 12. Specifically, a site-wide analysis of the geophysical structures that underlie the area occupied by LANL revealed new geologic information regarding the seismic conditions at the site.  *Id.*; Pl. Resp. to Deft. Mot. to Dismiss [Doc. 10] at 7-10.  As a result of the new geologic information, as well as more information on the various support functions, actions, and infrastructure needed for construction, "changes were made to the proposed design of the CMRR-NF."  Cook Decl. at ¶ 12.  In addition to addressing the seismic issues, other changes were made to "implement[] DOE's nuclear safety management design requirements for increased facility engineering controls to ensure protection of the public, workers, and the environment."  *Id.*  Also,

5

"sustainable design principles have been incorporated to minimize the environmental impacts of construction and operation of the proposed CMRR-NF."  *Id.*

In light of the design changes, NNSA prepared a Supplement Analysis pursuant to 10 C.F.R. § 1021.314(c)(2) to determine (1) if the 2003 EIS should be supplemented, (2) if a new EIS should be prepared, or (3) if no additional NEPA document was required.  *Id.* at ¶ 15.  On July 1, 2010, counsel for Plaintiff wrote to the DOE and the NNSA and expressed concerns about the adequacy of NNSA's NEPA analysis and the increased cost and scope of the CMRR-NF project.  Plaintiff requested that DOE stop any and all CMRR-NF design activities, make no further contractual obligations, and seek no further funding until NNSA complete a new EIS for the CMRR-NF.  *Id.*  On July 30, 2010, NNSA informed the Plaintiff that it was preparing a Supplement Analysis.  *Id.*  Prior to NNSA's completion of the Supplement Analysis of how to proceed with possible changes to the proposed design of the CMRR-NF, Plaintiff filed its Complaint on August 16, 2010.  *See* Doc. 1.

On September 21, 2010, NNSA's Deputy Administrator for Defense Programs, Donald L. Cook, decided "for prudential reasons" that the NNSA should complete an SEIS "to analyze the potential environmental impacts associated with the construction of the proposed CMRR-NF."  Cook Decl. at ¶ 16.  A Notice of Intent to prepare an SEIS appeared in the October 1, 2010 issue of the Federal Register.  *See* Ex. 2 attached to Doc. 9.

The preparation of the SEIS includes a public scoping process which involves "two public scoping meetings to assist NNSA in identifying potential impacts, alternatives, and mitigation strategies that should be analyzed in the SEIS."  Cook Decl. at ¶ 17.  Other federal agencies, as well as state agencies, Native American tribes, and the general public, including Plaintiff, are on notice of the NNSA's intention to prepare an SEIS and are able to participate in

6

determining the scope of the environmental analysis.  On April 22, 2011, the NNSA released a

draft of the SEIS to the public.  *See* National Nuclear Security Administration, *Draft*

*Supplemental Environmental Impact Statement for the Nuclear Facility Portion of the Chemistry*

*and Metallurgy Research Building Replacement Project at Los Alamos National Laboratory, Los*

*Alamos, New Mexico (CMRR-NF SEIS)* (DOE/EIS-0350-S1) (2011) (hereinafter "Draft SEIS"),

*available at* http://www.nnsa.energy.gov/nepa/cmrrseis.  Release of this draft began a comment

period scheduled to last at least 45days.  All public comments must be considered in the

preparation of the Final SEIS. Cook Decl. at ¶ 17.

Significantly, NNSA is still evaluating the aspects of relative sizing and layout of the

proposed CMRR-NF, and the overall project design is less than 50 percent complete.  *Id.* at ¶ 20.

In fact, the Draft SEIS contains a new proposed design option for the CMRR-NF that requires

significantly less excavation than the option that had been considered prior to the

commencement of the SEIS process.  *See* Draft SEIS at 2-14 to 2-19.  Unquestionably, the

CMRR-NF as currently envisioned will require an expenditure of resources and create a

potential environmental impact greater than the project as envisioned in the 2003 EIS and 2004

ROD, prior to discovery of the seismic issues.  However, no CMRR-NF construction is

underway, and none will occur until after the SEIS is finalized.  Cook Decl. at ¶ 21.  If, after

completion of the SEIS, NNSA decides to proceed with construction of the proposed

CMRR-NF, the building is not expected to be occupied and operational until 2022.  *Id.* at ¶ 23;

Pl. Resp. to Deft. Mot. to Dismiss [Doc. 10] at 11.  Thus, no construction or other irrevocable

actions appear to be ongoing while Defendants are engaging in the SEIS process.

**ANALYSIS**

A.    Prudential Mootness

In his F&R, the Magistrate Judge found that Plaintiff's Complaint should be dismissed based on the doctrine of prudential mootness.  Prudential mootness differs from the concept of the more common constitutional mootness.  Specifically, prudential mootness addresses a court's discretion in the exercise of granting or withholding relief, rather than the power to grant relief. *See Southern Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 727 (10th Cir. 1997).  Even if a case is not constitutionally moot, a court may dismiss the case under the doctrine of prudential mootness if the case "is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the *power* to grant."  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010) (citations omitted) (emphasis in original).  The doctrine of prudential mootness "has particular applicability in cases...where the relief sought is an injunction against the government."  *Southern Utah Wilderness Alliance*, 110 F.3d at 727.

Under the prudential mootness doctrine, the central inquiry is whether "circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful relief."  *Fletcher v. United States,* 116 F.3d 1315, 1321 (10th Cir. 1997); *Southern Utah Wilderness Alliance*, 110 F.3d at 727.  In cases involving prudential mootness, "a court may decline to grant declaratory or injunctive relief where it appears that a defendant, usually the government, has already changed or is in the process of changing its policies or where it appears that any repeat of the actions in question is otherwise highly unlikely."  *Rio Grande Silvery Minnow*, 601 F.3d at 1122, *quoting Building and Construction Department v. Rockwell Int'l Corp.*, 7 F. 3d 1487, 1492 (10th Cir. 1993).  A court's "sound discretion withholds the remedy where it appears that a challenged 'continuing practice' [of an administrative agency] is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form

8

cannot be confidently predicted." *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961).

The Magistrate Judge noted that Plaintiff seeks relief on the grounds that the project exceeds its scope as laid out in the 2003 EIS and 2004 ROD and that Plaintiff requests the Court to order Defendants to stop all activities in connection with the CMRR-NF pending completion of a new EIS and ROD.  The F&R found that, because Defendants are currently in the process of undertaking an SEIS that would supercede the 2003 EIS and 2004 ROD by taking into account geological information and necessary design modifications that came to light after the completion of the 2003 EIS and 2004 ROD, "circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief," and dismissal based on prudential mootness is appropriate.  F&R ¶ 25 (quoting *Southern Utah Wilderness Alliance*, 110 F.3d at 727).  In other words, because Plaintiff seeks injunctive relief to ensure that Defendants' design and planning of the CMRR-NF are made pursuant to an EIS, and Defendants are now conducting an SEIS that will govern the CMRR-NF project, the F&R finds that dismissal is proper because Defendants have changed their previous actions by ordering an SEIS.  *See id.* ¶ 29.  The Magistrate Judge based his ruling in part on his finding that construction of the CMRR-NF will not occur until after the SEIS is completed and a new ROD issued.  *See id*.  Thus, he concluded, "Plaintiff will have ample opportunity to renew its complaint if it finds it necessary when the SEIS is filed and before any construction begins."  *See id*. ¶ 29.

Plaintiff's Objections assert that the F&R misapplies the doctrine of prudential mootness because Defendants are engaged in ongoing NEPA violations, so that a promise to conduct NEPA analysis in the future cannot undo Defendants' failure to comply with NEPA prior to irretrievably committing resources to the CMRR-NF project.  Plaintiff contends that, with

respect to NEPA claims, the doctrine of prudential mootness applies only when a project is so close to completion that any meaningful relief is precluded. *See* Pl. Obj. [Doc. 33] at 4-5.

Plaintiff argues that, in this case, injunctive relief is appropriate because the project is still in its early stages and pausing the project to require Defendant to comply with its NEPA obligations would afford it meaningful relief. Plaintiff also characterizes Defendants' preparation of an SEIS as a "smokescreen" to defeat an injunction, and alleges that Defendants will continue to be in violation of NEPA as they move forward with design and construction of the CMRR-NF project so that preparation of an SEIS cannot make its Complaint moot. *Id*. at 11-13.

Plaintiff's Objections rely on two fundamental assertions that do not bear up under scrutiny: first, that NEPA requires Defendants to undertake a new EIS from scratch before moving forward with the project, and second, that Defendants are currently moving forward with final design and construction in violation of NEPA. Because neither of these is correct, the Magistrate Judge properly applied the doctrine of prudential mootness to dismiss this case.

The record before the Court demonstrates that Defendants have followed an orderly process as contemplated by NEPA with respect to the project in question. Following the completion of a comprehensive EIS in 2003, the CMRR-NF project was approved in an unchallenged 2004 ROD.[5] Pursuant to the 2004 ROD, NNSA partially excavated the CMRR-NF

---

[5] Defendants correctly point out that any challenges Plaintiff makes to the sufficiency of the original EIS and ROD are time-barred. NEPA claims are subject to the APA's general six-year limitation period under 28 U.S.C. § 2401(a). *See Greater Yellowstone Coal. v. Tidwell*, 572 F.3d 1115, 1123 n.3 (10th Cir. 2009); *Chem. Weapons Working Group, Inc. v. U.S. Dep't of the Army*, 111 F.3d 1485, 1494-95 (10th Cir. 1997). Defendants published the 2004 ROD in the Federal Register on February 12, 2004, so that any challenge to the adequacy of the 2003 EIS would have had to have been made by February 12, 2010, prior to the date Plaintiff filed the instant action. That said, the Court notes that Plaintiff's contention is that the 2003 EIS and

site in 2006 to allow for site characterization and seismic mapping.  New information developed

from this excavation and corresponding new building safety requirements led to significant

evolving design changes for the CMRR-NF.  As a result of these design changes, prior to this

lawsuit, NNSA began reviewing whether it should prepare an SEIS.  Although the NNSA's draft

Supplement Analysis allegedly concluded that the potential environmental impacts from

construction of the CMRR-NF in accordance with the evolving design changes were adequately

bounded and addressed in the 2003 EIS, NNSA nonetheless committed to preparing an SEIS

through a Notice of Intent published in the Federal Register.

Unquestionably, the scope of the CMRR-NF project has changed significantly since the

2003 EIS and 2004 ROD.  Had Plaintiff come before the Court seeking an injunction requiring

NNSA to complete an SEIS in the face of its continued refusal, the Court would be in a position

of having to determine whether NEPA requires an SEIS under such changed circumstances.

However, that is not the case currently before the Court.  Defendants are proceeding with an

SEIS, and are not moving forward with final design or construction pending completion of that

process.  Instead, Plaintiff contends that undertaking an SEIS does not satisfy Defendants'

NEPA obligations, because the changed circumstances are such that NEPA requires Defendants

to prepare a new EIS from scratch for the CMRR-NF project.  However, Plaintiff has come

forward with no legal support for its claim that Defendants are in violation of NEPA for not

having prepared a new EIS in the face of the project's modifications.

Under 10 C.F.R. § 1021.314, which is part of the NEPA implementation procedures for

DOE projects, "DOE shall prepare a supplemental EIS if there are substantial changes to the

───────────────

2004 ROD are not applicable to the CMRR-NF as currently envisioned.

proposal or significant new circumstances or information relevant to environmental concerns," and "DOE may supplement a draft EIS or final EIS at any time, to further the purposes of NEPA." 10 C.F.R. §§ 1021.314(a), (b). In this case, whether doing so was voluntary or mandatory, Defendants are currently preparing a supplement to the initial EIS in response to changed circumstances, exactly as the NEPA regulations contemplate.

Plaintiff's contention that "[i]t is emphatically not the law that a NEPA case becomes moot when an agency states that it hopes, in the future, to fulfill its NEPA obligations," Pl. Obj. at 3, and its reliance on *Blue Ocean Soc'y v. Watkins*, 767 F. Supp. 1518 (D. Haw. 1991) for that proposition, is misguided. First, *Blue Ocean* did not address prudential mootness, but instead was a constitutional mootness case. *See* 767 F. Supp. at 1522. Second, not only had the defendant in *Blue Ocean* not prepared an EIS for the project in question, it had not commenced preparation of an EIS through publication of a notice in the Federal Register at the time of the decision. *See id.* at 1523. Not surprisingly, the *Blue Ocean* court held that a mere promise to correct a NEPA violation at some point in the future was insufficient to render a case constitutionally moot. In the instant case, however, Defendants initially prepared an EIS for the project and are currently following a well-defined process of supplementing that EIS based on new information related to the initial project design. Defendants are not currently out of compliance with NEPA, nor is their commitment to supplementing the EIS merely aspirational.

Plaintiff's contention that the doctrine of prudential mootness only applies in NEPA cases in which the project in question is substantially complete is similarly misguided. Plaintiff cites three cases from outside of the Tenth Circuit to make its argument: *Sierra Club v. U.S. Army Corps of Eng'r*, 2008 WL 2048359 (3d Cir. May 14, 2008), *Crutchfield v.U.S. Army Corps of Eng'r*, 192 F. Supp. 2d 444 (E.D. Va. 2001), and *Sierra Club v. Babbitt*, 69 F. Supp. 2d 1202

(E.D. Cal. 1999).  In *Sierra Club v. U.S. Army Corps of Engineers*, the court found the plaintiff's claims challenging a permit to fill wetlands to be prudentially moot because all but .12 of the 7.69 acres of the wetlands had been filled, preventing any opportunity for meaningful relief for the plaintiff.  However, the *Sierra Club* court did not limit the doctrine of prudential mootness to the narrow circumstances of a nearly-completed project, as Plaintiff seeks to do.  Instead, the court recognized that "the central question in a prudential mootness analysis is 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'"  2008 WL 2048359 at *2 (citation omitted).  This is the same general analysis the Magistrate Judge applied in this case.  *See* F&R at ¶ 20 (quoting *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997)).

Plaintiff characterizes *Crutchfield* as holding that NEPA claims "*were not* prudentially moot because *work remained to be done on defendant's project*."  Pl. Obj at 4 (emphasis in original).  However, it is misleading to suggest that *Crutchfield* uses project completion as the barometer for whether prudential mootness applies.  The *Crutchfield* court did not find prudential mootness to be inapplicable to the dispute simply because work remained to be done on the challenged project; instead it found that the case was not prudentially moot because the defendant county continued with construction on a wastewater treatment plant component prior to obtaining the necessary permit from the Army Corps of Engineers to dredge and destroy wetlands impacted by the project.  192 F. Supp. 2d at 466.  Secondly, at the time the request for an injunction was heard, the same court had previously held that the Corps had not conducted the requisite environmental assessments of the project and had, when "confronted with considerable pressure from the County, made permitting decisions that defied logic and law."  *Id*. at 462.  In contrast, in this case, NNSA has approved the CMRR-NF project in full satisfaction of NEPA,

13

and construction of the project is on hold pending completion of the SEIS and issuance of a new ROD.

Plaintiff's reliance on *Sierra Club v. Babbitt* is similarly misplaced. *Babbitt* concerned the construction of a highway through Yosemite National Park. Despite finding that the defendants had violated NEPA by failing to prepare an EIS for the project, the court declined to enjoin work on several portions of the road or to order that an EIS be prepared. *See* 69 F. Supp. 2d at 1259-60. The court did not apply the doctrine of prudential mootness because it found that effective relief was still available to the plaintiff on one portion of the project. *See id*. at 1244. Because the court found that the defendants remained out of compliance with NEPA and with the Wild and Scenic Rivers Act, and because it found that most of the work to be performed on that portion of the project had already been abandoned so that an injunction would result in little burden on the defendants, the court found that injunctive relief on that portion of the project pending compliance was appropriate. In this case, there has been no finding of noncompliance with NEPA, and additional environmental studies are already underway.

The three cases cited by Plaintiff related to substantial completion as a requirement for prudential mootness in the NEPA context are distinguishable in another way as well. All three of the cases concerned projects that involved ongoing construction and that either were, or could have been, rapidly completed. In the instant case, not only are Defendants holding off on construction of the CMRR-NF pending completion of the SEIS and accompanying ROD, but the project is expected to take at least ten years after the start of construction to become operational. *See* Cook Decl. at ¶ 23. Thus, the danger of rendering an otherwise valid case moot through project completion is much reduced in this case compared to the cases cited by Plaintiff.

The Magistrate Judge correctly recognized that Defendants' undertaking of an SEIS

means that "circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief."  F&R ¶ 25 (quoting *Southern Utah Wilderness Alliance*, 110 F.3d at 727).  The Court agrees that "sound discretion withholds the remedy where it appears that a challenged 'continuing practice' [of an administrative agency] is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted."  *Id*. ¶ 22 (quoting *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961)).  The final form and conclusion of the SEIS cannot currently be known.  Plaintiff has the ability to actively participate in the process to ensure that its perspectives are heard.  Thus, the SEIS process may address many, if not all, of Plaintiff's concerns about the environmental effects of the proposed CMRR-NF project.  If, upon completion of the SEIS and issuance of the ROD, Plaintiff believes that its perspectives were not adequately considered, it will have the opportunity to file a new complaint.  The Court agrees with the Magistrate Judge that it would be imprudent to halt all work, including design analysis, and to issue what would essentially be an advisory opinion while the SEIS process (which had not yet begun at the start of litigation) is ongoing.

  B.  Ripeness

  Although the Magistrate Judge did not base his decision on Defendants' assertion that this case is not yet ripe for adjudication, this would have been an equally valid ground for dismissal.  The doctrine of ripeness is premised on justiciability and is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S.

15

803, 807-08 (2003) (citations omitted).  If a claim rests "upon contingent future events that may

not occur as anticipated, or indeed may not occur at all," it is not considered ripe.  *Texas v.*

*United States*, 523 U.S. 296, 300 (1998) (citations omitted).  In this case, the NNSA is in the

process of completing an SEIS to analyze the potential environmental impacts associated with

the construction of the proposed CMRR-NF project.  The process is still open to public

participation and it is unclear at this point what form the SEIS and associated ROD will take.

      While the SEIS process is ongoing, there is no ripe "final agency action" for the Court to

review pursuant to the Administrative Procedure Act, 5 U.S.C. § 704.  *See, e.g., Coal. for*

*Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d 1244, 1250 (10th Cir. 2001) (holding that

the ripeness test includes whether there is a "final agency action" under the APA); *Sierra Club v.*

*Slater*, 120 F.3d 623, 631 (6th Cir. 1997) ("[I]t appears well established that a final EIS or the

ROD issued thereon constitute the 'final agency action' for the purposes of the APA"); *Bennett*

*Hills Grazing Ass'n v. United States*, 600 F.2d 1308, 1309 (9th Cir. 1979) (finding that a draft

EIS was not a "final agency action" subject to judicial review).

      Plaintiff contends that the "final agency action" undertaken by Defendants was their

implementation of the CMRR-NF project in violation of NEPA.  *See* Pl. Obj. at 7.  For this

contention, it cites *Catron County Bd. of Comm'rs v. U.S. Fish and Wildlife Serv.*, 75 F.3d 1429,

1434 (10th Cir. 1996), which it characterizes as holding that a failure to comply with NEPA

could constitute a "final agency action" under 5 U.S.C. § 551(13).  However, *Catron County*

involved a challenge to a final agency rule (designation of critical habitat under the Endangered

Species Act) that had been promulgated without undertaking an EIS.  *See* 75 F.3d at 1432-33.  In

*Catron County*, there was no question that the agency had taken a final action (designating

habitat); the only question was whether undertaking such a final agency action required it to

16

comply with NEPA, and the court found that the final action did require such compliance.  In

this case, there has been no showing of a NEPA violation, and no final agency action.  *See, e.g.,*

*N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 459 F. Supp. 2d 1102, 1116-1117 (D.N.M.

2006) ("[I]f there is still a real possibility that the agency will conduct further environmental

analysis, the NEPA claim is not yet ripe"), *vacated in part and reversed in part on other*

*grounds,* 565 F.3d 683 (10th Cir. 2009); *Coliseum Square Ass'n, Inc. v. Dep't of Housing and*

*Urban Dev.*, 2003 WL 715758, at *6 (E.D. La. 2003) (holding that judicial review of NEPA

claims was "inappropriate in light of the reopened [NEPA] reviews"), *aff'd*, 465 F.3d 215 (5th

Cir. 2006); *Ctr. for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1150 (S.D. Tex. 1996)

("Of course, any challenge to the supplemental EIS itself is not ripe for review, because there is

no final agency action to review until the EIS is actually issued").

Plaintiff next contends that its claims are ripe because Defendants are currently engaged

in making an irretrievable commitment of resources related to the CMRR-NF project.  *See* Pl.

Obj. at 7 (citing *New Mexico ex rel. Richardson v. Bureau of Land Management*, 565 F.3d 683,

718 (10th Cir. 2009) ("assessment of all 'reasonably foreseeable' impacts must occur at the

earliest practicable point, and must take place before an 'irretrievable commitment of resources'

is made.") (citations omitted).  However, Defendants have presented evidence that NNSA is still

evaluating aspects of the sizing and layout of the proposed CMRR-NF project, and that the

overall project design is less than 50 percent complete.  *See* Cook Decl. at ¶ 20.  The Draft SEIS

published by NNSA indicates that two construction options, a deep excavation option and a

shallow excavation option, are currently under consideration by NNSA, with the shallow option

having been added since the issuance of the Notice of Intent to Prepare an SEIS in October,

2010.  Further design options could emerge by the end of the SEIS process as a result of public

17

participation, including participation by Plaintiff.  Clearly, the CMRR-NF project is still in some state of flux.  Plaintiff admits that Defendants have still not made what they call "Critical Decision 2" or "Critical Decision 3," which formally allow detailed design and construction, and that Congress has never authorized or appropriated funds for the actual construction of the proposed CMRR-NF.  Complaint at ¶ 20.  As the Magistrate Judge found, no CMRR-NF construction is underway, and none will occur while the SEIS process is ongoing.  *See* F&R at ¶ 16.  Although NNSA has spent approximately $210 million over the past 6 years on the CMRR-NF project, this has been for building design and analysis.  *See* Cook Decl. at ¶ 19.  However, the expenditure of even large amounts of money on design does not indicate that NNSA has made an "irreversible and irretrievable commitment of resources," because design work is ongoing and neither a final SEIS nor a final approval for construction has been issued.  In other words, the design work undertaken by Defendants over the past six years is not a "final agency action," and therefore does not present an action ripe for review.  *See Ctr. for Native Ecosystems v. Cables*, 509 F.3d 1310, 1329 (10th Cir. 2007) (in order to constitute a final agency action, an action must satisfy two requirements: "the action must mark the consummation of the agency's decisionmaking process–it must not be of a merely tentative or interlocutory nature...and the action must be one by which rights or obligations have been determined, or from which legal consequences will flow") (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

In a closely related vein, Plaintiff also argues that Defendants have violated NEPA by predetermining the result of its environmental analysis, so that the SEIS process is essentially a sham.  Predetermination occurs "only when an agency *irreversibly and irretrievably* commits itself to a plan of action that is dependent upon the NEPA environmental analysis producing a certain outcome, *before* the agency has completed that environmental analysis."  *Forest*

*Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 714 (10th Cir. 2010) (emphasis in original).  In order to prove predetermination, "[a] petitioner must meet a high standard."  *Id.* Predetermination generally refers not to the agency having a preferred alternative, but rather to an agency entering into a binding agreement with an outside group committing it to a particular action prior to conducting an environmental analysis.  *See id.* at 713-15 (citing *Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 780-81 (10th Cir. 2006); *Lee v. U.S. Air Force*, 354 F.3d 1229, 1240 (10th Cir. 2004); *Metcalf v. Daley*, 214 F.3d 1135, 1144 (9th Cir. 2000)).  Plaintiff has come forward with no evidence of any such agreement in this case.

Plaintiff relies heavily on *Davis v. Mineta*, 302 F.3d 1104 (10th Cir. 2004) for the proposition that allowing a project to go forward pending an environmental analysis creates a serious risk that the analysis of alternatives required by NEPA will be skewed toward completion of the project that is already underway.  Certainly, preservation of the ability of an agency to take a hard look at genuine alternatives is essential to the NEPA process.  However, *Davis* arose in a very different context than the situation the Court is confronted with in this instance.  *Davis* concerned an attempt to enjoin a highway construction project.  The *Davis* defendants never completed an EIS related to the project.  Instead, they issued a Finding of No Significant Impact ("FONSI") that enabled them to forego production of an EIS.  *See* 302 F.3d at 1109.  The *Davis* court found that the defendants had predetermined the NEPA issues because the contractor hired to conduct the environmental analysis was contractually obligated to prepare a FONSI, so that the decision to forego an EIS had already been made prior to conducting an environmental analysis and prior to receiving any public comments.  *Id.* at 1112.  Ultimately, the court enjoined construction while the defendants performed a proper environmental analysis.  *Id.* at 1126.

Unlike *Davis*, in which the court had to rule on the adequacy of a final agency action (the issuance of a FONSI), the Court here is asked to step in while Defendants are still in the process of completing an SEIS as contemplated by NEPA.  This action would be premature.  Further, the continuation of design activities as part of the SEIS process is hardly a showing of predetermination of the type at issue in *Davis*.  An agency may legitimately have a preferred alternative in mind when it is conducting a NEPA analysis.  *See Forest Guardians*, 611 F.3d at 712.  A reviewing court must ultimately determine whether an agency truly took a hard look at alternatives as part of the decision making process, rather than merely justifying decisions it had already made.  *Id*.  However, this is a determination to be made at the completion of the process, as opposed to while it is ongoing.  Notably, even the *Davis* court, which expressed concern about prejudicing the selection of alternatives through ongoing work, only enjoined actual construction pending completion of an environmental analysis; it did not order a halt to planning and design. *See* 302 F.3d at 1126.  Such a halt would not be appropriate in this case either, especially in the absence of a finding of a NEPA violation.  *Cf. Nat'l Audubon Soc'y v. Dep't of the Navy*, 422 F.3d 174, 202-03 (4th Cir. 2005) (rejecting as overly broad an injunction, following the finding of a NEPA violation, enjoining planning and development, in addition to construction, of a Navy aircraft landing field, pending preparation of an SEIS).

Plaintiff also relies on the unpublished case of *Los Alamos Study Group v. O'Leary*, No. 94-1306-M (D.N.M. Jan. 26, 1995), for the proposition that "under NEPA regulations, it is illegal for an agency to continue an activity while an EIS is being prepared unless such action 'will not prejudice the ultimate decision on the program.'" *O'Leary,* Slip Op. at 19 (citations omitted).  *O'Leary* also arises in a different context than this case.  *O'Leary* concerned a project for which the DOE never conducted an EIS.  Despite failure to complete an EIS, the defendant

had already completed one phase of the project and was in the process of constructing the two

remaining phases of the project.  *See id*. at 2.  The court enjoined construction of the project (but

not planning or design), pending completion of the required EIS.  In this case, NNSA has taken

no action that was not already analyzed and approved in the 2003 EIS and 2004 ROD, and no

CMRR-NF construction is occurring.  Thus, unlike the defendant in *O'Leary*, NNSA has

followed the proper procedure of approving the project pursuant to an EIS and delaying

construction while analyzing potential design changes in the SEIS.

Because the Court does not know what form the SEIS will ultimately take, and because

Plaintiff has not demonstrated the type of irreversible and irretrievable commitment to a

particular plan as discussed in the case law, the Court finds that any claim of predetermination is

not ripe at this point.  Significantly, even if the Court could make a finding of predetermination

at this point, such a finding would not automatically mean that an agency's analysis was

arbitrary and capricious, it only means that a court reviewing the final agency decision "is more

likely to conclude that the agency failed to take a hard look at the environmental consequences

of its actions and, therefore, acted arbitrarily and capriciously."  *Forest Guardians*, 611 F.3d at

713 n.17.  As previously discussed, the Court is not reviewing a final agency decision.  Thus, the

issue of whether Defendants conducted an adequate analysis in compiling their SEIS, of which

the question of predetermination is a component, is not ripe at this point.

## CONCLUSION

In rendering its decision in this case, the Court has not considered any of the policy

considerations raised in this action, such as whether the proposed new nuclear facility is

necessary for national security, whether a delay in construction will be detrimental to research,

or whether the existing facility can be modified sufficiently to serve LANL's needs thereby

eliminating the need for a new facility.  Such policy debates are not relevant to this litigation.

Instead, the Court bases its decision solely on what NEPA requires and where this case currently

is in the NEPA process.

Plaintiff's interpretation of NEPA would condemn agencies to the role of the mythical

Sisyphus, forever advancing projects up a hill, only to be forced to start over from scratch when

they encounter new information that results in design challenges.  This is not what NEPA

requires.  Instead, the NEPA regulations contemplate that agencies will address significant new

circumstances through the issuance of an SEIS, just as Defendants are in the process of doing in

this case.  Some of the concerns raised by Plaintiff may be addressed by the issuance of the SEIS

and accompanying ROD; it is too early to tell while the process is ongoing.  On the other hand, it

may well be that at the end of the process, Plaintiff will continue to have concerns about whether

Defendants sufficiently considered alternative proposals and the potential environmental impacts

of their chosen design.  If so, judicial review of the agency's final decision will be available at

that point.  The Magistrate Judge was correct in finding that Plaintiff's Complaint should be

dismissed on the grounds of prudential mootness because Defendants are undertaking an SEIS.

Dismissal is also appropriate because, until the completion of the SEIS process, this case is not

yet ripe for review.

**IT IS THEREFORE ORDERED** that Plaintiff's *Objections to Magistrate Judge's*

*Proposed Findings and Recommended Disposition* [Doc. 33] are overruled, and that the

Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 25] is adopted.  IT

IS FURTHER ORDERED that Defendants' *Motion to Dismiss for Lack of Jurisdiction* [Doc. 9]

is hereby granted.

**UNITED STATES DISTRICT JUDGE**